KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
MEGAN K. HEY, State Bar No. 232345
TATIANA K. GAUR, State Bar No. 246227
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 897-2611
 Fax: (213) 897-2802
 E-mail: Megan.Hey@doj.ca.gov
*Attorneys for Plaintiff the State of California*
*Department of Toxic Substances Control*

JS-6

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,**<br><br>Plaintiff,<br><br>v.<br><br>**SU-DALE-CO, Inc., d.b.a. SUPERIOR PLATING COMPANY, a California corporation, KENNETH JEFFERS, individually, ROYCE MCCLINTICK, individually, MARY MCCLINTICK, individually, ADRIENNE FORESTER, individually, LEONARD FORESTER, individually, and DOES 1-10,**<br><br>Defendants. | Case No. 5:15-cv-02151-MWF-DTB<br><br>XXXXXXXXXX **CONSENT DECREE BETWEEN PLAINTIFF AND DEFENDANTS SU-DALE-CO, INC., d.b.a. SUPERIOR PLATING COMPANY, KENNETH JEFFERS, ADRIENNE FORESTER, AND LEONARD FORESTER**<br><br>Courtroom:   1600<br>Judge: Hon.   Michael W. Fitzgerald<br><br>Trial Date:   Not Set<br>Action Filed: October 16, 2015 |

## INTRODUCTION

1. Plaintiff the State of California Department of Toxic Substances Control ("Plaintiff") filed a complaint in this matter pursuant to section 107(a) of the

Exhibit A
005

1   Comprehensive Environmental Response, Compensation, and Liability Act

2   ("CERCLA"), 42 U.S.C. section 9601 et seq., against several parties, including

3   defendants Su-Dale-Co, Inc., doing business as Superior Plating Company

4   ("Superior Plating"), Kenneth Jeffers ("Jeffers"), Adrienne Forester and Leonard

5   Forester (the "Foresters") (collectively, the "Settling Defendants").  In its

6   complaint, Plaintiff seeks the recovery of costs incurred or to be incurred by

7   Plaintiff in responding to releases and/or threatened releases of hazardous

8   substances at, beneath, and/or from the property at street address 389 East End

9   Avenue in Pomona, Los Angeles County, California, identified as Assessor's Parcel

10  Number 8326-025-021 (the "Site"), pursuant to section 107(a) of CERCLA, 42

11  U.S.C. § 9607(a).  Plaintiff also seeks declaratory relief under section 113(g)(2) of

12  CERCLA, 42 U.S.C. § 9613(g)(2), alleging that the Settling Defendants are jointly

13  and severally liable for future response costs to be incurred by Plaintiff with respect

14  to the Site.  Additionally, Plaintiff alleges a cause of action against Superior Plating

15  for recovery of Plaintiff's costs of corrective action and civil penalties pursuant to

16  California Health and Safety Code sections 25187.5 and 25188 based on Superior

17  Plating's noncompliance with Plaintiff's corrective action order regarding the Site.

18       2.     In its complaint, Plaintiff alleges, in relevant part, that:

19             a.     Superior Plating operated a metal plating and stripping facility

20       on the Site from approximately 1965 to 2009.  Superior Plating used

21       chromium and nickel, among other hazardous substances, in its operations.

22             b.     The Foresters and Defendants Royce and Mary McClintick (the

23       "McClinticks") were co-owners of the Site and Superior Plating from

24       approximately 1988 to approximately 1998.

25             c.     In 1998, Jeffers acquired the Foresters' partial ownership

26       interest in the Site and in Superior Plating.  Jeffers and the McClinticks are

27       the current co-owners of the Site.

28

Exhibit A
006

d.      As a result of the operations at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released, into the soil at, beneath, and/or from the Site.

e.      The Los Angeles County Fire Department Health and Hazardous Materials Division (the "County") inspected the Site at various times from 1991 until 2006, and as a result of those inspections, the County issued several Notices of Violation to Superior Plating related to its operations at the Site.

f.      Plaintiff conducted a Phase 1 Environmental Assessment Verification Inspection of the Site in December 2006. Plaintiff's inspectors observed, among other things, chemical stains and residue on the tanks used for Superior Plating's operations.

g.      On August 5, 2009, Plaintiff issued an Enforcement Order for Corrective Action to Superior Plating (the "Corrective Action Order"), which became final on February 16, 2010. The Corrective Action Order required Superior Plating to prepare, among other things, various workplans and reports about the Site, to assess the nature and extent of contamination at the Site, and to allow Plaintiff to determine appropriate corrective measures.

h.      Superior Plating did not comply with the requirements of the Corrective Action Order.

i.      On July 30, 2010, Plaintiff issued an Imminent and/or Substantial Endangerment Determination ("ISE Determination") for the Site. The ISE Determination found that the Site was potentially contaminated with hazardous substances including chromium, lead, and nickel. It further found that a response action at the Site was necessary because there was a release or threatened release of hazardous substances.

j.      In September 2011, Plaintiff conducted investigations at the Site through which it identified hazardous substances, including arsenic,

5:15-cv-02151-MWF-DTB                    3                 [PROPOSED] CONSENT DECREE

Exhibit A
007

1    hexavalent chromium, nickel, and lead, in the soil at the Site.

2        k.    In January 2012, Plaintiff prepared a Preliminary Site

3    Assessment Report evaluating subsurface conditions and contamination at

4    the Site.

5        l.    In July 2012, Plaintiff approved a Removal Action Workplan

6    ("RAW") for the Site.  In July 2012, DTSC implemented the RAW, which

7    included removing soil and concrete contaminated with hazardous substances

8    and replacing the removed soil and concrete with clean imported fill.

9    3.    Some contamination remains in the soil at the Site.  Pursuant to the

10   terms of the RAW and state regulatory requirements, a covenant restricting the use

11   of the Site (hereafter "Land Use Covenant") must be recorded by the Site's

12   owner(s) because the Site is unacceptable for unrestricted use.

13   4.    Plaintiff has taken response actions at the Site including, but not

14   limited to, the following activities: site investigation, removal/remedial actions;

15   enforcement/cost recovery; oversight; public participation; and compliance with the

16   California Environmental Quality Act.  Plaintiff's response actions were not

17   inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

18   5.    Plaintiff also conducted the corrective actions required by the

19   Corrective Action Order.

20   6.    Plaintiff has incurred costs for "response" as that term is defined in

21   section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in taking actions related to the

22   release and/or threatened release of hazardous substances at, around, and/or beneath

23   the Site.

24   7.    As of January 1, 2016, Plaintiff's unreimbursed response costs related

25   to the Site exceed $ 222,309.  Plaintiff continues to incur response costs related to

26   the Site, including its enforcement costs to litigate the complaint.

27   8.    Plaintiff contends that each of the Settling Defendants is a responsible

28   party pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and that each is

Exhibit A
008

1   jointly and severally liable under CERCLA for response costs incurred and to be

2   incurred by Plaintiff at the Site.

3       9.      Plaintiff and Settling Defendants (collectively, the "Parties") agree and

4   this Court, by entering this Consent Decree finds, that this Consent Decree has been

5   negotiated by the Parties in good faith, that settlement of this matter will avoid

6   prolonged and complicated litigation, and that this Consent Decree is fair,

7   reasonable, and in the public interest.

8       **THEREFORE**, the Court, with the consent of the Parties to this Consent

9   Decree, hereby **ORDERS, ADJUDGES, and DECREES**, as follows:

10                          **I.  JURISDICTION**

11      10.     The Court has subject matter jurisdiction over the matters alleged in

12  this action pursuant to 28 U.S.C. §§ 1331, 1367(a) and 42 U.S.C. § 9613(b), and

13  personal jurisdiction over each of the Parties.  Venue is appropriate in this district

14  pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b).  The Court has the

15  authority to enter this Consent Decree as an order of the Court.

16                          **II.  PARTIES BOUND**

17      11.     This Consent Decree shall apply to, be binding upon, and inure to the

18  benefit of the Parties, and their representatives, successors, heirs, legatees, and

19  assigns.

20                **III.  SETTLEMENT OF DISPUTED CLAIMS**

21      12.     This Consent Decree resolves the alleged liability of Settling

22  Defendants under section 107 of CERCLA, 42 U.S.C. § 9607 and the alleged

23  liability of Superior Plating under California Health and Safety Code sections

24  25187.5 and 25188 in exchange for consideration, including payments by Settling

25  Defendants to reimburse a portion of Plaintiff's response costs incurred and to be

26  incurred at or in connection with the Site.

27      13.     By entering into this Consent Decree, the Parties resolve Plaintiff's

28  claims against Settling Defendants with respect to the releases and/or threatened

Exhibit A
009

1   releases of hazardous substances at the Site.

2       14.    This Consent Decree represents a fair, reasonable and equitable

3   settlement of Plaintiff's claims against Settling Defendants.

4       15.    This Consent Decree was negotiated and executed by the Parties in

5   good faith to avoid prolonged and expensive litigation and to further the public

6   interest.

7       16.    Settling Defendants do not admit any of the allegations of the

8   complaint.  Nothing in this Consent Decree shall be construed as an admission of

9   any issue of law or fact or of any violation of law.

10      17.    Except as otherwise expressly provided in this Consent Decree, the

11  Parties consent to, and shall not challenge, entry of this Consent Decree or this

12  Court's jurisdiction to enter and enforce this Consent Decree.

13      18.    Upon approval and entry of this Consent Decree by the Court, this

14  Consent Decree shall constitute a final judgment between the Parties.

15      19.    Except as otherwise expressly provided in this Consent Decree, each

16  of the Parties to this Consent Decree will bear his, her or its own attorneys' fees and

17  litigation costs.

18                        **IV.  DEFINITIONS**

19      20.    Unless otherwise expressly provided herein, all terms used in this

20  Consent Decree that are defined in CERCLA or in the regulations promulgated

21  under CERCLA, shall have the meaning assigned to them in the statute or

22  regulations.

23      21.    "Effective Date" shall mean the date of entry of this Consent Decree

24  by this Court.

25      22.    "Foresters" shall mean defendants Adrienne and Leonard Forester.

26      23.    "Jeffers" shall mean defendant Kenneth Jeffers.

27      24.    "Interest" shall mean interest at the rate specified for interest on

28  investments of the Hazardous Substance Account pursuant to Health and Safety

Code section 25360.1.  The applicable rate of Interest shall be the rate in effect at the time the Interest accrues.

25.   "Land Use Covenant" shall mean the Land Use Covenant for the Site, a copy of which is attached as Exhibit A to this proposed Consent Decree.

26.   "Matters Addressed" shall mean all past and future Response Costs alleged to have been incurred by or on behalf of Plaintiff with respect to the Site, including, but not limited to, Plaintiff's oversight costs

27.   "McClinticks" shall mean defendants Royce and Mary McClintick.

28.   "McClinticks' Quit-Claim Deeds" shall mean the unrecorded deed(s) quit claiming the ownership interest of each of the McClinticks in the Site to Jeffers in approximately 1998 that Jeffers has represented to Plaintiff he possesses.

29.   "Parties" shall mean Plaintiff and Settling Defendants.

30.   "Plaintiff" shall mean the State of California Department of Toxic Substances Control.  Plaintiff is the California state agency with primary jurisdiction over the actions taken in response to the release and threatened release of hazardous substances at the Site.

31.   "Response Costs" shall mean all costs of "removal," "remedial action" or "response" (as those terms are defined by section 101 of CERCLA, 42 U.S.C. § 9601), incurred or to be incurred by Plaintiff in response to the release or threatened release of hazardous substances at the Site, including in the soil.  Said term shall include, but not be limited to, direct labor costs; contractor, consultant and expert costs; travel and any other out-of-pocket expenses; the costs of implementing and enforcing institutional controls and environmental restrictive covenants; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances at the Site; indirect costs, including overhead charges; oversight costs; applicable interest charges; and attorneys' fees.  Said term shall also include Plaintiff's costs incurred in taking the corrective actions required by the Corrective Action Order.

Exhibit A
011

32.   "Settling Defendants" shall mean the Foresters, Jeffers, and Superior Plating.

33.   The "Site" shall mean the property located at street address 389 East End Avenue in Pomona, Los Angeles County, California, identified as Assessor's Parcel Number 8326-025-021.  For the purposes of the complaint, the Site includes the vertical and areal extent of the hazardous substance contamination that is or has been present at, beneath, and/or from the Site.

34.   "Superior Plating" shall mean defendant Su-Dale-Co, Inc., doing business as Superior Plating Company.

## V.   JEFFERS' & SUPERIOR PLATING'S SETTLEMENT OBLIGATIONS

35.   Payment.  Jeffers, on behalf of himself and Superior Plating, shall pay to Plaintiff the sum of one hundred-twenty-eight thousand dollars ($128,000), for partial reimbursement of Plaintiff's Response Costs incurred at the Site.  The payment to Plaintiff will be made within thirty (30) days from the Effective Date of this Consent Decree.

36.   Instructions for Payments.  All payments to Plaintiff shall be made by certified check, cashier's check or money order made payable to Cashier, California Department of Toxic Substances Control, and shall bear on its face both the docket number of this proceeding and the phrase "Site Code 301496."  The payments shall be sent to:

> Department of Toxic Substances Control
> Accounting/Cashier
> 1001 I Street
> P.O. Box 806
> Sacramento, CA  95812-0806
>
> A copy of the check shall be mailed to:
>
> Emad Yemut, Supervisor
> Site Mitigation and Brownfields Reuse Program
> Department of Toxic Substances Control

Exhibit A
012

5796 Corporate Avenue
Cypress, CA 90630

37.   Recording of McClinticks' Quit-Claim Deeds.

a.    Jeffers has expressly represented to Plaintiff that (1) he possesses the unrecorded McClinticks' Quit-Claim Deeds defined in paragraph 27, and (2) he will be the sole owner of the Site after he records the McClinticks' Quit-Claim Deeds with the Los Angeles County Registrar-Recorder/County Clerk.

b.    Within five (5) business days of his signing this proposed Consent Decree, Jeffers shall record the McClinticks' Quit-Claim Deeds with the Los Angeles County Registrar-Recorder/County Clerk. Jeffers shall immediately provide Plaintiff with a certified copy of the recorded McClinticks' Quit-Claim Deeds by transmitting a certified copy of the recorded documents to Plaintiff at the contact listed in paragraph 57 (Notices), below.

38.   Land Use Covenant.

a.    As the sole owner of the Site, within five (5) business days of the Effective Date of this proposed Consent Decree, Jeffers shall execute and record the Land Use Covenant, a copy of which is attached as Exhibit A to this proposed Consent Decree, with the Los Angeles County Registrar-Recorder/County Clerk. Jeffers shall immediately provide Plaintiff with a certified copy of the recorded Land Use Covenant by transmitting a certified copy of the recorded document to Plaintiff at the contact listed in paragraph 57 (Notices), below.

b.    Plaintiff will issue a No Further Action letter to Settling Defendants within five (5) business days of its receipt of the certified copy of the recorded Land Use Covenant.

Exhibit A
013

39.     Except as otherwise stated in this Consent Decree, performance by Jeffers will fully and finally resolve any and all obligations of Jeffers and Superior Plating under this Consent Decree.  Neither Jeffers nor Superior Plating  shall have any liability for non-performance of any obligation of the Foresters under this Consent Decree.

## VI.  THE FORESTERS' SETTLEMENT OBLIGATIONS

40.     Payments.  The Foresters shall pay to Plaintiff the sum of forty thousand dollars ($40,000) in accordance with paragraph 36 (Instructions for Payments), above, in two payments described in sub-paragraphs (a) and (b) below, to partially reimburse Plaintiff's Response Costs incurred at the Site:

       a.     Foresters will make an initial payment to Plaintiff in the amount of twenty-seven thousand dollars ($27,000) within thirty (30) days from the Effective Date of this proposed Consent Decree; and

       b.     Foresters will pay the balance in the amount of thirteen thousand ($13,000) within six (6) months of the initial payment described in sub-paragraph (a), above.

41.     Failure to Pay.  In the event that the Foresters fail to make any payment required by paragraph 40, above, when due, then Foresters shall immediately pay the entire unpaid amount to Plaintiff, with Interest accruing from the due date of the first missed payment until the full remaining balance is paid. This paragraph does not limit or waive any other remedies available to Plaintiff as against the Foresters by virtue of the Foresters' failure to comply with the requirements of this Consent Decree.

42.     Except as otherwise stated in this Consent Decree, performance by the Foresters will fully and finally resolve any and all obligations by the Foresters under this Consent Decree.  The Foresters shall not have any liability for non-performance of any obligation of Jeffers and/or  Superior Plating under this Consent Decree.

Exhibit A
014

# VI. ACCESS TO INFORMATION

43. Availability of Documents. Upon Plaintiff's request, Settling Defendants shall provide Plaintiff with copies of all records, reports, documents and other information within their possession or control or that of their contractors or agents relating to (a) the ownership, operation or control of the Site; (b) the ownership, generation, treatment, transportation or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at the Site, including the soil; or (d) removal, remedial or response actions at the Site.

44. Settling Defendants agree that, unless they receive prior written consent from Plaintiff to dispose of the records, documents or other information, neither they nor their agents will alter, mutilate, discard, destroy or otherwise dispose of records, documents or other information referred to in paragraph 43. In the event that any of the Settling Defendants intends to dispose of documents or information referred to in paragraph 43 of this Consent Decree, they will provide such documents or information to Plaintiff.

45. Confidential and Privileged Documents. Settling Defendants, or any of them, may assert confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with California Health and Safety Code section 25358.2. Documents or information determined to be confidential by Plaintiff will be afforded the protection specified in California Health and Safety Code section 25358.2. Settling Defendants, or any of them, may also assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If any Settling Defendant asserts such a privilege in lieu of providing documents, they shall provide Plaintiff with a description of the document withheld and basis for asserting such privilege.

Exhibit A
015

## VII.  COVENANTS NOT TO SUE BY PLAINTIFF

46.    In consideration of the actions that will be performed by Settling Defendants and the settlement payments that they will make under the terms of this Consent Decree, and except as expressly provided in Section VIII (Reservation of Rights) of this Consent Decree, Plaintiff covenants not to sue Settling Defendants, or any of them, pursuant to CERCLA, the California Hazardous Substances Account Act ("HSAA"), California Health and Safety Code section 25300 et seq., or any other statute, regulation, or common law theory to: (1) recover Plaintiff's Response Costs; or (2) require response actions, including removal or remedial actions in response to the release or threatened release of hazardous substances at the Site, including the soil.  As to each Settling Defendant, this covenant not to sue is conditioned upon the complete and satisfactory performance by that Settling Defendant of all of his, her, or its obligations under this Consent Decree.

47.    In further consideration of the settlement payment that Superior Plating will make under the terms of this Consent Decree, and except as expressly provided in Section VIII (Reservation of Rights) of this Consent Decree, Plaintiff covenants not to sue Superior Plating pursuant to California Health and Safety Code section 25188 to recover civil penalties regarding the Corrective Action Order.  This covenant not to sue is conditioned upon the complete and satisfactory performance by Superior Plating of all of its obligations under this Consent Decree.

## VIII.  RESERVATION OF RIGHTS

48.    Claims Regarding Other Matters.  Plaintiff reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and each of them, with respect to all matters not expressly included within Section VII (Covenants Not To Sue).

49.    Reservation of Claims.  Plaintiff reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and each of them, with respect to:

a.   Claims based on a failure of any of the Settling Defendants to meet a requirement of this Consent Decree;

b.   Liability resulting from any action by any of the Settling Defendants after the Effective Date that exacerbates the release and/or threat of release of a hazardous substance from the Site;

c.   Liability based on the ownership of the Site by Settling Defendants when such ownership commences after signature of this Consent Decree by Settling Defendants.

d.   Liability resulting from any failure by any of the Settling Defendants after the Effective Date, to exercise due care with respect to hazardous substances at the Site;

e.   Liability for damages for injury to, destruction of, or loss of natural resources, as defined in section 101(6) of CERCLA, 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

f.   Liability arising from the past, present, or future disposal, release and/or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site; and

g.   Criminal liability.

50.   Unknown Conditions/New Information.  Notwithstanding any other provision in the Consent Decree, Plaintiff reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order seeking to compel any of the Settling Defendants to perform response activities at the Site and/or to pay Plaintiff for additional Response Costs, if:

a.   Either of the following occurs: (i) conditions at the Site, previously unknown to Plaintiff, are discovered, or (ii) information previously unknown to Plaintiff, is received, in whole or in part; and

b. Plaintiff determines that the previously unknown conditions or new information together with other relevant information indicate that the response actions at the Site are not protective of human health or the environment.

51. <u>Claims Against Other Persons.</u>  Plaintiff reserves, and this Consent Decree is without prejudice to, all rights, claims, and causes of action Plaintiff may have against any person other than any of the Settling Defendants.  Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, which Plaintiff may have against any person or other entity not a signatory to this Consent Decree.

52. <u>Government Authority.</u>  Except as expressly provided in this Consent Decree, nothing in the Consent Decree is intended or shall be construed to preclude Plaintiff from exercising its authority under any law, statute, or regulation with respect to the Site.  Furthermore, except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to preclude any state agency, department, board or entity, or any federal or local agency, department, board or entity, from exercising its authority under any law, statute, or regulation with respect to the Site.

### IX. COVENANT NOT TO SUE BY SETTLING DEFENDANTS

53. Settling Defendants covenant not to sue, and agree not to assert any claims or causes of action against Plaintiff, or its contractors or employees, that arise out of the transaction or occurrence that is the subject matter of Plaintiff's complaint, or for any injuries, losses, costs, or damages caused or incurred as a result of the performance of the requirements of this Consent Decree.

### X. CONTRIBUTION PROTECTION

54. With regard to claims for contribution against each of the Settling Defendants, each Settling Defendant is entitled to contribution protection pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) for the "Matters

Exhibit A
018

1   Addressed" in this Consent Decree, except for actions and claims identified in

2   Plaintiff's Reservation of Rights (Section VIII.)

3       55.   As to each of the Settling Defendants, the contribution protection

4   provided in this Section is conditioned upon full performance of his/her/its

5   obligations under this Consent Decree.

6       56.   Nothing in this Consent Decree limits or impairs the right of Plaintiff

7   to pursue any other person for unrecovered Response Costs incurred by Plaintiff.

8   **XI. NOTIFICATION**

9       57.   Notification to or communication among the Parties as required or

10  provided for in this Consent Decree, except as provided by paragraph 36

11  (Instructions for Payments) of this Consent Decree, shall be addressed as follows:

12      For Plaintiff:

13
14      Emad Yemut, Supervisor
    Site Mitigation and Brownfields Reuse Program

15      Department of Toxic Substances Control
    5796 Corporate Avenue

16      Cypress, CA 90630

17      For Defendants Kenneth Jeffers and/or Superior Plating:

18
19      Robert L. Slaughter III
    Lewis Brisbois Bisgaard & Smith LLP

20      633 West Fifth Street, Suite 4000
    Los Angeles, CA 90071

21      robert.slaughter@lewisbrisbois.com

22
23      For Defendants the Foresters:

24      Jennifer F. Novak

25      The Law Office of Jennifer F. Novak
    609 Deep Valley Drive, Suite 200

26      Rolling Hills Estates, CA 90274

27      jennifer.novak @jenniferfnovaklaw.com

28

## XII.  GENERAL TERMS

58.   Modification of Consent Decree.  This Consent Decree may be modified only upon the written approval of the Parties and the Court.

59.   Parties Bound.  This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties, and their representatives, successors, heirs, legatees, and assigns.

60.   Integration.  This Consent Decree, including the exhibit incorporated herein by reference, constitutes the entire agreement among the Parties and may not be amended or supplemented except as provided for in this Consent Decree.

61.   Lodging/Public Comment.  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  Plaintiff shall file with the Court any written comments received and Plaintiff's responses thereto.  Plaintiff reserves the right to withdraw or withhold its consent if comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper or inadequate.  Plaintiff reserves the right to withdraw this Consent Decree if Jeffers fails to record the McClinticks' Quit-Claim Deeds pursuant to paragraph 37.  Settling Defendants consent to entry of this Consent Decree without further notice.

62.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the discretion of Plaintiff or Settling Defendants, or any of them.

63.   No Waiver of Enforcement.  The failure of Plaintiff to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  The failure of Plaintiff to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

64.   Retention of Jurisdiction.  The Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Consent Decree until the

1    requirements of this Consent Decree have been fully satisfied.

2    65.   <u>Counterparts.</u> This Consent Decree may be executed in two or more

3 counterparts, each of which shall be deemed an original, but all of which together

4 shall constitute one and the same instrument.

5    66.   <u>Signatories.</u> Each signatory to this Consent Decree certifies that he or

6 she is fully authorized by the party he or she represents to enter into this Consent

7 Decree, to execute it on behalf of the party represented and legally to bind that

8 party.

9                 **XIII.  APPROVALS OF PARTIES**

10      Plaintiff consents to this Consent Decree by its duly authorized representative

11 as follows:

12                        STATE OF CALIFORNIA DEPARTMENT

13                        OF TOXIC SUBSTANCES CONTROL

14    Dated:   7-26-16     By:  _____

15                        [name and title]
                       Brownfields and Environmental

16                        Restoration Branch
                       California Dept. of Toxic Substances Control

17

18

19

20      Superior Plating consents to this Consent Decree as follows:

21                        SU-DALE, CO., INC. dba SUPERIOR PLATING

22                        COMPANY

23    Dated:   7-19-16     By:  _____

24                        [name and title]

25

26      [signatures continue on next page]

27

28

Exhibit A
021

1  Kenneth Jeffers consents to this Consent Decree as follows:

2

3  Dated: _7-19-16_   By: _Kenneth Jeffers_

4                            **KENNETH JEFFERS**

5

6  Adrienne Forester consents to this Consent Decree as follows:

7

8  Dated: _____   By: _____

9                            **ADRIENNE FORESTER**

10

11  Leonard Forester consents to this Consent Decree as follows:

12

13

14  Dated: _____   By: _____

15                            **LEONARD FORESTER**

16

17  **IT IS SO ORDERED, ADJUDGED AND DECREED.**

18

19

20  Dated: _____   _____

21                            HON. MICHAEL W. FITZGERALD
                             UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

Kenneth Jeffers consents to this Consent Decree as follows:


Dated: _____    By: _____
                                    KENNETH JEFFERS


Adrienne Forester consents to this Consent Decree as follows:


Dated: 7-20-2016    By: Adrienne Forester
                              ADRIENNE FORESTER


Leonard Forester consents to this Consent Decree as follows:


Dated: 7-20-16    By: Leonard Forester
                          LEONARD FORESTER


**IT IS SO ORDERED, ADJUDGED AND DECREED.**


Dated: January 24, 2017    _____

                              HON. MICHAEL W. FITZGERALD
                              UNITED STATES DISTRICT JUDGE

Exhibit A
023

# Exhibit A

RECORDING REQUESTED BY:
Mr. Kenneth Jeffers, Owner
P.O. Box 290572
Phelan, California 92329


WHEN RECORDED, MAIL TO:

Department of Toxic Substances Control
5796 Corporate Avenue
Cypress, California 90630
Attention: Emad B. Yemut, Unit Chief
(Cleanup Program School Evaluation and
Brownfields Outreach - Cypress)

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## LAND USE COVENANT AND AGREEMENT

## ENVIRONMENTAL RESTRICTIONS

County of Los Angeles, Assessor Parcel Number(s): 8326-025-021
Superior Plating Company
Project Codes 301496 and 550554

This Land Use Covenant and Agreement ("Covenant") is made by and between Mr. Kenneth Jeffers ("Covenantor"), the current owner of property located at 389 N. East End Avenue, Pomona, in the County of Los Angeles, State of California (the "Property"), and the Department of Toxic Substances Control (the "Department").  Pursuant to Civil Code section 1471, the Department has determined that this Covenant is reasonably necessary to protect present or future human health or safety or the environment as a result of the presence on the land of hazardous materials as defined in Health and Safety Code section 25260.  The Covenantor and the Department hereby agree that, pursuant to Civil Code section 1471 and Health and Safety Code section 25355.5, the use of the Property be restricted as set forth in this Covenant and that the Covenant shall conform with the requirements of California Code of Regulations, title 22, section 67391.1.

ARTICLE I

STATEMENT OF FACTS

1.1.    Property Location.  The Property that is subject to this Covenant, totaling approximately 0.25 acres, is more particularly described in the attached Exhibit A, Legal Description and depicted in Exhibit B, Assessor's Parcel Map and  Confirmation Soil Sample Location and Area of Excavation Map. The Property is located at 389 N. East End Avenue in Pomona, California and is bordered by North East End Avenue, Village Academy High School, and Pueblo Elementary School to the east.   The Property is also identified as County of Los Angeles, Assessor's Parcel Number 8326-025-021.

1.2.    Remediation of Property.   This Property has been investigated and remediated under the Department's oversight.  The Department approved a Final Removal Action Workplan (RAW) on July 26, 2012, in accordance with Health and Safety Code, division 20, chapter 6.8.  The remediation activities conducted at the Property include soil removal of hazardous substances from impacted areas, including Arsenic, Hexavalent Chromium, Nickel and Lead.

 The Removal Action Completion Report (RACR) indicates that upon the completion of implementation of the RAW, soils with metals concentrations remain at the Property within acceptable ranges for commercial/industrial land use, but above levels acceptable for unrestricted land use.

1.3.    Basis for Environmental Restrictions.  As a result of the presence of hazardous substances, which are also hazardous materials as defined in Health and Safety Code section 25260, at the Property, the Department has concluded that it is reasonably necessary to restrict the use of the Property in order to protect present or future human health or safety or the environment, and that this Covenant is required as part of the Department-approved remedy for the Property.  The Department has also concluded that the Property, as remediated and when used in compliance with the Environmental Restrictions of this Covenant, does not present an unacceptable risk to present and future human health or safety or the environment.

## ARTICLE II
## DEFINITIONS

2.1.   <u>Department</u>. "Department" means the California Department of Toxic Substances Control and includes its successor agencies, if any.

2.2.   <u>Environmental Restrictions</u>. "Environmental Restrictions" means all protective provisions, covenants, restrictions, requirements, prohibitions, and terms and conditions as set forth in this Covenant.

2.3.   <u>Improvements</u>. "Improvements" includes, but is not limited to, buildings, structures, roads, driveways, improved parking areas, wells, pipelines, or other utilities.

2.4.   <u>Lease</u>. "Lease" means lease, rental agreement, or any other document that creates a right to use or occupy any portion of the Property.

2.5.   <u>Occupant</u>. "Occupant" or "Occupants" means Owner and any person or entity entitled by ownership, leasehold, or other legal relationship to the right to occupy any portion of the Property.

2.6.   <u>Owner</u>. "Owner" or "Owners" means the Covenantor, and any successor in interest including any heir and assignee, who at any time holds title to all or any portion of the Property.

2.7.   <u>Hedge Area</u>. "Hedge Area" means the area located along the southern perimeter of the Property depicted in green on the Confirmation Soil Sample Location and Area of Excavation Map contained in Exhibit B hereto.

## ARTICLE III
## GENERAL PROVISIONS

3.1.   <u>Runs with the Land</u>. This Covenant sets forth Environmental Restrictions that apply to and encumber the Property and every portion thereof no matter how it is improved, held, used, occupied, leased, sold, hypothecated, encumbered, or conveyed. This Covenant: (a) runs with the land pursuant to Civil Code section 1471 and Health and Safety Code section 25355.5; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by the Department; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion thereof.

3.2.   <u>Binding upon Owners/Occupants</u>.  This Covenant: (a) binds all Owners of the Property, their heirs, successors, and assignees; and (b) the agents, employees, and lessees of the Owners and the Owners' heirs, successors, and assignees. Pursuant to Civil Code section 1471, all successive Owners of the Property are expressly bound hereby for the benefit of the Department; this Covenant, however, is binding on all Owners and Occupants, and their respective successors and assignees, only during their respective periods of ownership or occupancy except that such Owners or Occupants shall continue to be liable for any violations of, or non-compliance with, the Environmental Restrictions of this Covenant or any acts or omissions during their ownership or occupancy.

3.3.   <u>Incorporation into Deeds and Leases</u>.  This Covenant shall be incorporated by reference in each and every deed and Lease for any portion of the Property.

3.4.   <u>Conveyance of Property</u>.  The Owner and new Owner shall provide Notice to the Department not later than 30 calendar days after any conveyance or receipt of any ownership interest in the Property (excluding Leases, and mortgages, liens, and other non-possessory encumbrances).  The Notice shall include the name and mailing address of the new Owner of the Property and shall reference the site name and site code as listed on page one of this Covenant.  The notice shall also include the Assessor's Parcel Number(s) noted on page one. If the new Owner's property has been assigned a different Assessor's Parcel Number, each such Assessor's Parcel Number that covers the Property must be provided.  The Department shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect proposed conveyance, except as otherwise provided by law or by administrative order.

3.5.   <u>Costs of Administering the Covenant to Be Paid by Owner</u>.  The Department has already incurred and will in the future incur costs associated with this Covenant.  Therefore, the Covenantor hereby covenant for the Covenantor and for all subsequent Owners that, pursuant to California Code of Regulations, title 22, section 67391.1(h), the Owner agrees to pay the Department's costs in administering, implementing, and enforcing this Covenant.

ARTICLE IV

RESTRICTIONS AND REQUIREMENTS

4.1.   Prohibited Uses.  The Property shall not be used for any of the following purposes without prior written approval by the Department:

(a)   A residence, including any mobile home or factory built housing, constructed or installed for use as residential human habitation.

(b)   A hospital for humans.

(c)   A public or private school for persons under 18 years of age.

(d)   A day care center for children.

4.2.   Soil Management.  Soil management activities at the Property are subject to the following requirements in addition to any other applicable Environmental Restrictions:

(a)   Except for those activities specified in the RAW as approved by the Department on July 26, 2012, no activities that will disturb the soil (e.g., excavation, grading, removal, trenching, filling, earth movement, mining, or drilling) within the Hedge Area, shall be allowed at the Property without a Soil Management Plan pre-approved by the Department in writing.

(b)   Except for those activities specified in the RAW as approved by the Department on July 26, 2012, no activities that will disturb the soil (e.g., excavation, grading, removal, trenching, filling, earth movement, mining, or drilling) at a depth exceeding twenty-four inches in any area of the Property outside the Hedge Area shall be allowed at the Property without a Soil Management Plan pre-approved by the Department in writing.

(c)   Any soil brought to the surface by excavation, grading, removal, trenching, filling, earth movement, mining, or drilling shall be managed in accordance with all applicable provisions of state and federal law.

4.3.   Prohibited Activities.  The following activities shall not be conducted at the Property:

(a)   Drilling for any water, oil, or gas without prior written approval by the Department.

(b)   Extraction or removal of groundwater without a Groundwater Management

Exhibit A
029

Plan pre-approved by the Department in writing.

(c)      Activity that may alter, interfere with, or otherwise affect the integrity or effectiveness of, or the access to, any investigative, remedial, monitoring, operation or maintenance system *(e.g., cap, vapor extraction system, monitoring system, groundwater extraction system)* or activity required for the Property without prior written approval of the Department.

4.4.    <u>Access for Department</u>. The Department shall have reasonable right of entry and access to the Property for inspection, investigation, remediation, monitoring, and other activities as deemed necessary by the Department in order to protect human health or safety or the environment.

4.5.    <u>Access for Implementing Operation and Maintenance</u>.  The entity or person responsible for implementing the operation and maintenance activities, if any, shall have reasonable right of entry and access to the Property for the purpose of implementing such operation and maintenance activities until the Department determines that no further operation and maintenance activity is required.

4.6.    <u>Inspection and Reporting Requirements</u>.  The Owner shall conduct an annual inspection of the Property verifying compliance with this Covenant and shall submit an annual inspection report to the Department for its approval by **January 15**[th] of each year.  The annual inspection report must include the dates, times, and names of those who conducted the inspection and reviewed the annual inspection report.  It also shall describe how the observations that were the basis for the statements and conclusions in the annual inspection report were performed (e.g., drive by, fly over, walk in, etc.).  If any violation is noted, the annual inspection report must detail the steps taken to correct the violation and return to compliance.  If the Owner identifies any violations of this Covenant during the annual inspection or at any other time, the Owner must within 10 calendar days of identifying the violation: (a) determine the identity of the party in violation; (b) send a letter advising the party of the violation of the Covenant; and (c) demand that the violation cease immediately.  Additionally, a copy of any correspondence related to the violation of this Covenant shall be sent to the Department within 10 calendar days of its original transmission.

4.7      Five-Year Review.   In addition to the annual reviews noted above, after

Exhibit A
030

a period of five (5) years from the executed date of this Covenant and every five (5) years thereafter, the Owner shall submit a Five-Year Review report documenting its review and evaluation of the remedy implemented to determine if human health and the environment are being adequately protected by the remedy as implemented.  The report shall describe the results of all inspections, sampling analyses, tests, and other data generated or received by the Owner and evaluate the adequacy of the implemented remedy in protecting human health and the environment.  As a result of any review work performed, the Department may require Owner to perform additional review work or modify the review work previously performed by Owner.

ARTICLE V

ENFORCEMENT

5.1.   Enforcement.  Failure of the Owner or Occupant to comply with this Covenant shall be grounds for the Department to require modification or removal of any Improvements constructed or placed upon any portion of the Property in violation of this Covenant.  Violation of this Covenant, such as failure to submit (including submission of any false statement) record or report to the Department, shall be grounds for the Department to pursue administrative, civil, or criminal actions, as provided by law.

ARTICLE VI

VARIANCE, REMOVAL AND TERM

6.1.   Variance from Environmental Restrictions.  Any person may apply to the Department for a written variance from any of the Environmental Restrictions imposed by this Covenant.  Such application shall be made in accordance with Health and Safety Code section 25223.

6.2   Removal of Environmental Restrictions.  Any person may apply to the Department to remove the Environmental Restrictions imposed by this Covenant or terminate the Covenant in its entirety.  Such application shall be made in accordance with Health and Safety Code section 25224.

6.3   Term.  Unless ended in accordance with paragraph 6.2, by law, or by the Department in the exercise of its discretion, this Covenant shall continue in effect in perpetuity.

ARTICLE VII

<u>MISCELLANEOUS</u>

7.1.   <u>No Dedication Intended</u>.  Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property, or any portion thereof, to the general public or anyone else for any purpose whatsoever.

7.2.   <u>Recordation</u>.  The Covenantor shall record this Covenant, with all referenced Exhibits, in the County of Los Angeles within 10 calendar days of the Covenantor's receipt of a fully executed original.

7.3.   <u>Notices</u>. Whenever any person gives or serves any Notice ("Notice" as used herein includes any demand or other communication with respect to this Covenant), each such Notice shall be in writing and shall be deemed effective: (a) when delivered, if personally delivered to the person being served or to an officer of a corporate party being served; or (b) five calendar days after deposit in the mail, if mailed by United States mail, postage paid, certified, return receipt requested.  Notices shall be sent to the following persons:

|  |  |
|---|---|
| To Owners: | Mr. Kenneth Jeffers, |
| | P.O. Box 290572 |
| | Phelan, California 92329 |
| | |
| To Department: | Emad B. Yemut, P.E., Unit Chief |
| | Department of Toxic Substances Control |
| | 5796 Corporate Avenue |
| | Cypress, California 90630 |

Any party may change its address or the individual to whose attention a Notice is to be sent by giving advance written Notice in compliance with this paragraph.

7.4.   <u>Partial Invalidity</u>.  If this Covenant or any of its terms are determined by a court of competent jurisdiction to be invalid for any reason, the surviving portions of this Covenant shall remain in full force and effect as if such portion found invalid had not been included herein.

Exhibit A
032

7.5.    <u>Statutory References</u>.  All statutory or regulatory references include successor provisions.

7.6.    <u>Incorporation of Exhibits</u>.  All exhibits and attachments to this Covenant are incorporated herein by reference.

IN WITNESS WHEREOF, the Covenantor and the Department hereby execute this Covenant.

Covenantor:    Kenneth Jeffers

By:            _____

Title:         _____
               Print Name and Title of Signatory

Date:          _____


Department of Toxic Substances Control

By:            _____

Title:         _____
               Emad B. Yemut, P.E., Unit Chief

Date:          _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____

On _____ before me,

_____

*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

_____ (seal)
Signature of Notary Public

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____

On _____ before me,

_____

*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,


_____ (seal)
Signature of Notary Public

# Exhibit A
# "Legal Description"

**Situs Address:** 389 S EAST END AVE
POMONA, CA 91766

FIPS Code: LOS ANGELES
FIPS Sub Code: 000
FIPS State Code: CALIFORNIA
APN Sequence Number: 1
Unformatted APN: 8326025021
Formatted APN: 8326-025-021
Original APN: 8326 025 021
Property Indicator: INDUSTRIAL LIGHT
Land Use: LIGHT INDUSTRIAL
Zoning: POM1*
Land Square Footage: 10575
Acres: 0.2428

## PROPERTY INFORMATION

Subdivision Name: POMONA TR
Subdivision Plat
Book: 3
Subdivision Plat
Page: 96

**Legal Description: TR=POMONA TRACT LOT COM S 61 FT FROM SE COR OF
LOT 3 PM 91-80-81 TH S 61 FT WITH UNIFORM DEPTH OF 175 FT W
POR OF LOT 214**

Block Number: 214
Lot Number: 214

Exhibit B

Assessor's Parcel Map

and

Confirmation Soil Sample Location and Area of

Excavation  Map



Exhibit A
039

